IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DENNIS ARTHUR TALBOT, JR. | * | |
| | * | |
| v. | * | Civil No. JFM-01-2643 |
| | * | |
| U.S. FOODSERVICE, INC., et al. | * | |
| | ***** | |

MEMORANDUM

Plaintiff Dennis Arthur Talbot, Jr., a former employee for Defendant U.S. Foodservice ("Foodservice"), has brought an action for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; and the Americans with Disabilities Act ("ADA," or "the Act"), 42 U.S.C. § 12101 et seq. Defendant has moved to dismiss the ADA claim under Fed. R. Civ. P. 12(b)(6), contending that Plaintiff failed to exhaust administrative remedies before filing suit. For the reasons stated below, the motion will be treated as a motion for summary judgment under Fed. R. Civ. P. 56 and granted.

I.

Talbot was employed by Foodservice as a warehouse worker from June 1989 until October 2000. He admitted to unintentionally falling asleep at work one day during a break, when he was not feeling well. Shortly after that incident, on September 28, 2000, he was suspended for failing to return to work after his break. On October 4, 2000, he was fired, allegedly for charging the company for time not worked.[1]

---

[1] It is not clear from the Amended Complaint whether the suspension and discharge related to the same incident. Foodservice states that Talbot's description of his suspension mischaracterizes the facts or is inaccurate or incomplete. (Answer ¶ 8.) It admits that Talbot's "theft of time from the company" was part of the reason he was fired. (Answer ¶ 9.)

1



Talbot claims the real reasons he was suspended and then fired are because he is African American and suffers from an illness called polycystic kidney disease. He contends that white employees committed similar violations but were not fired. He also alleges that his union, Teamsters Local 570, refused to pursue his grievance because of his race and disability. Talbot filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Human Relations Commission on October 10, 2000.[2]

II.

The Federal Rules of Civil Procedure require that, when a court considers matters outside the pleadings, a motion to dismiss "shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12(b). In order to decide this motion, which deals exclusively with administrative exhaustion of Plaintiff's ADA claim, I must consider two items of evidence extrinsic to the pleadings: Plaintiff's EEOC charge, which was submitted by the Defendant, and an EEOC discharge form that Plaintiff completed on April 19, 2001, which was submitted by the Plaintiff as part of his Opposition. (See Def.'s Mem. Attach. 2, Pl.'s Opp'n Attach. 2.) Thus, I will treat this as a motion for summary judgment.[3]

---

[2] The charge is actually dated and date-stamped October 20, 2000. However, Plaintiff states in his Amended Complaint that it was filed on October 10, 2000. (Am. Compl. ¶ 14.) The difference in dates is not material to this motion.

[3] Plaintiff had actual notice that the motion might be converted. Both parties submitted evidence extrinsic to the pleadings. Therefore, "by operation of the Federal Rules of Civil Procedure, [plaintiff] also should have been on notice that the . . . motion could be considered by the court to be a summary judgment motion." See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998). Plaintiff asserts that he will be prejudiced by treating this as a motion for summary judgment, since he has not yet received written discovery nor deposed one of Defendant's officials. However, any discovery taken by Plaintiff could not alter the facts on the present record establishing that Plaintiff failed to exhaust the administrative

2

III.

It is well settled that a plaintiff may not assert an ADA discrimination claim in court until he has exhausted the administrative remedies as to that claim. See 42 U.S.C. § 12117(a); see also Ansley v. Varsity Transit, Inc., 1999 WL 672526, at *3 (S.D.N.Y. 1999) (explaining that the ADA incorporates by reference the procedures that apply under Title VII, including administrative exhaustion of remedies). In determining what claims have been administratively exhausted, the litigant is not limited to the "precise wording" of his formal EEOC charge of discrimination, but may litigate "all claims of discrimination uncovered in a reasonable EEOC investigation of that charge." Hubbard v. Rubbermaid, Inc., 436 F.Supp. 1184, 1189 (D. Md. 1977); see also Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981) (explaining that "the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination"); King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976) ("The suit filed may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge.'") (quoting Equal Employment Opportunity Comm'n v. General Electric, 532 F.2d 359, 365 (4th Cir. 1976)).

Plaintiff failed to check the box next to "disability" in the "cause of discrimination" section of his EEOC charge. Instead, he checked only the box next to "race." Further, he did not mention anywhere in the charge, including in the factual narrative, that he was disabled. Rather, his charge alleged only race discrimination and cited a cause of action under Title VII, not the

---

remedies at the EEOC.

ADA.[4] Where a litigant has neither checked the box for disability discrimination, nor mentioned disability discrimination or the ADA anywhere in his charge of discrimination, the EEOC cannot reasonably have been expected to have investigated disability discrimination. Cf., e.g., Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999) (finding no exhaustion of retaliation claim where plaintiff checked only the box for age discrimination and did not mention retaliation except in post-charge letter to EEOC); Lyon v. Bell Atlantic Corp., 2001 WL 826580, at *5 (D. Md. 2001) (finding no administrative exhaustion where plaintiff had not checked the box for retaliation and did not mention retaliation in the charge narrative). Thus, Plaintiff has not exhausted administrative remedies as to a claim of disability discrimination.

Other courts have reached the same result in analogous circumstances. Courts have refused to find administrative exhaustion of disability claims where only race discrimination was alleged in an administrative charge, noting that an investigation of race discrimination could not reasonably be expected to encompass a "totally different kind[] of allegedly improper conduct . . . ." Rodriguez v. Airborne Express, 265 F.3d 890, 897 (9th Cir. 2001); see also Ansley, 1999 WL 672526, at *3 (declining to allow an ADA claim to be raised in court that had not first been raised in an administrative charge). In particular, exhaustion of a disability claim is not found

---

[4]Talbot's EEOC charge consists of the following narrative:
   I.    I began my employment with the above named company in June 1989 as a warehouse worker. On or about September 28, 2000, I was suspended then discharged on October 6, 2000. Similarly situated Caucasian employees were treated more favorably.
   II.   No explanation was given for the difference in treatment.
   III.  I believe that I was discriminated against with respect to suspension and discharge because of my race (African-American) in violation of Title VII of the Civil Rights Act of 1964, as amended.
(Def.'s Mem. Attach. 2.)

when, as here, the claimant did not check the disability box or even mention in the EEOC charge that he was disabled or suffered from health problems. See Penns v. Gannett Rochester Newspapers, 966 F.Supp. 174, 175 (W.D.N.Y. 1997); Rodriguez v. Gary Plastic Packaging Corp., 1997 WL 16665, at *4 (S.D.N.Y. 1997); Spurlock v. Nynex, 949 F.Supp. 1022, 1030 (W.D.N.Y. 1996).

Plaintiff asserts that a reasonable EEOC investigation would have included his allegation of disability discrimination because he mentioned his disability on an EEOC form entitled "Discharge, Job Elimination, or Layoff" that he completed on April 19, 2001, six months after his charge of discrimination. (Pl.'s Opp'n Attach. 2 at 1-2.) On the form, Talbot was asked to provide the employer's stated reason for firing him, give his own explanation for his performance or conduct, and discuss why he thought the firing was unfair. (See id. at 2.) He stated that he was told he was fired for "[f]raudulent charging of time, i.e., charging the Co. for time not worked." (Id.) He wrote that he told his employer "that I have polycystic kidney disease and that at times my right side has pain unexpectedly. I wasn't feeling well so on my last break I sat down on a pallet and accidentally dosed [sic] off." (Id.) He explained that he thought his firing was discriminatory because "[t]heir [sic] were incidents where white employees committed the same offense and were not discharged." (Id.) Plaintiff checked boxes on the form for "race" and "color" -- but not "disability" -- as reasons for his discharge, and provided the names of two white employees who had committed similar infractions but had not been fired and a black employee who, like him, had been fired. (Id. at 4, 8.)

Even assuming such documentation is appropriately relied upon by a court in considering administrative exhaustion,[5] Plaintiff cited his illness on the EEOC discharge form not as a reason he was fired, but as an explanation for why he fell asleep at work. Thus, Plaintiff mentioned his illness only in the context of his own motive (or lack thereof) to violate work rules, not in the context of the discriminatory motive of his employer. Nowhere on the discharge form did he assert that he could not work because of his disability or that he was fired because of his disability.[6] Instead, he explicitly reiterated what he had stated earlier on his EEOC charge: that he believed his firing was due to his race. Therefore, a reasonable EEOC investigation into Plaintiff's allegations would not have included disability discrimination.

Plaintiff argues in the alternative that failure to exhaust administrative remedies should be excused in this case because Defendant "has demonstrated no desire or inclination for conciliation of discrimination claims." (Pl.'s Opp'n at 4.) Plaintiff cites Lilly v. Harris-Teeter Supermarket, 720 F.2d 326 (4th Cir. 1983), as authority for a futility exception to the administrative exhaustion requirement. However, Lilly held only that intervenors may be

---

[5]In Lane v. Wal-Mart Stores East, Inc., 69 F.Supp.2d 749 (D. Md. 1999), Judge Blake considered a similar EEOC questionnaire (in that case, an ADA Information Form) in "assessing the contours of a reasonable [EEOC] investigation." Id. at 756. She held that the plaintiff could assert a theory of actual disability in her lawsuit based on her statements on the form, even though her charge of discrimination stated only that she had been regarded as disabled. See id. However, Lane involved only different theories of disability discrimination. It does not necessarily stand for the proposition that a plaintiff may rely upon such a form as a basis for proving exhaustion of a wholly different form of discrimination than that alleged in his EEOC charge.

[6]In fact, Plaintiff indicated in his deposition that he was physically able to work and that, while employed by Foodservice, he had not asked for an accommodation or any special treatment. (Talbot Dep. at 15, 21.)

excused from exhausting EEOC remedies as to claims similar to those that the plaintiff had exhausted. Id. at 335. It did not hold that a single plaintiff may be excused from the exhaustion requirement just because he suspected any attempts at conciliation would be fruitless. See, e.g., Murphy v. West, 945 F.Supp. 874, 876 (D. Md. 1996) (finding no support for a futility exception to the exhaustion requirement). Therefore, Plaintiff was required to exhaust the administrative remedies as to his ADA claim. Because he did not do so, Defendant's motion will be granted.

Date: March 26, 2002

J. Frederick Motz
United States District Judge